IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

ROBERT VINCENT and GEORGIA VINCENT,

      Plaintiffs,

v.                                 Civil Action No. 5:04CV125
                                            (STAMP)

CONSOLIDATION COAL COMPANY,

      Defendant.

**MEMORANDUM OPINION AND ORDER**
**GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

I.  Procedural History

On October 6, 2004, the plaintiffs, Robert Vincent and Georgia Vincent, filed a complaint in Circuit Court of Marshall County, West Virginia, and the case was removed to this Court on November 4, 2004. Removal to this Court was based upon diversity of citizenship. In their complaint, plaintiffs allege that as a result of deliberate and intentional conduct of the defendant, Consolidation Coal Company, plaintiff, Robert Vincent, was severely and permanently injured while acting within the scope of his employment for the defendant. Georgia Vincent seeks damages for loss of consortium. On September 9, 2005, the defendant filed a motion for summary judgment, to which the plaintiffs responded and Consolidation Coal Company replied. This motion is now fully briefed and ripe for review. After reviewing the parties' memoranda and the applicable law, this Court finds that

Consolidation Coal Company's motion for summary judgment should be granted.

## II.  Facts

The plaintiff, Robert Vincent was injured on October 7, 2002 while working at the Shoemaker Mine in Marshall County, West Virginia.  The plaintiff was instructed to operate Motor No. 95, when his other motor malfunctioned.  Plaintiff descended into the mine.  While approaching 4,700 feet Motor No. 95 derailed.  The derailment caused plaintiff to fall to the deck of the motor.  Motor No. 95 had derailed on prior occasions and the cause of the derailments is unclear.  Motor No. 95 has been checked repeatedly and no mechanical problems have been found.  Further, the plaintiff contends that at the 4,700-foot section of the mine there was a low joint.[1]  There were no signs or indication at the opening or inside the mine that a low joint existed in the mine.  There were no reports of a low joint at the 4,700-foot section of the mine prior to Mr. Vincent's accident.

## III.  Applicable Law

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment

---

[1]A low joint is when water accumulates on the track.

as a matter of law." The party seeking summary judgment bears the initial burden of showing the absence of any genuine issues of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). "The burden then shifts to the nonmoving party to come forward with facts sufficient to create a triable issue of fact." Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991), cert. denied, 502 U.S. 1095 (1992)(citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)). However, as the United States Supreme Court noted in Anderson, "Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Id. at 256. "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250; see also Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979)(Summary judgment "should be granted only in those cases where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law." (citing Stevens v. Howard D. Johnson Co., 181 F.2d 390, 394 (4th Cir. 1950))).

In Celotex, the Court stated that "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Summary judgment is not appropriate until after the non-moving party has had sufficient opportunity for discovery. See Oksanen v. Page Mem'l Hosp., 912 F.2d 73, 78 (4th Cir. 1990), cert. denied, 502 U.S. 1074 (1992). In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## IV.  Discussion

"[T]he right of the injured employee to workmen's compensation has been substituted in lieu of his cause of action against the negligent employer and this remedy of compensation is an exclusive remedy." J.H. Fletcher & Co. v. Allied Chemical Corp., 498 F. Supp. 629, 630 (W. Va. 1980). This blanket rule bears one exception. An employer's immunity from tort liability is lost only when the employer "acted with 'deliberate intention.'" W. Va. Code § 23-4-2(c)(2). There are two alternative means by which a plaintiff can establish a cause of action under the deliberate intention exception to workers' compensation immunity. The

4

plaintiffs' claim is brought only under the second exception of the deliberate intention statute.

A plaintiff can prevail on the deliberate intention exception to an employer's workers' compensation immunity if he or she can prove the existence of five elements set forth in West Virginia Code § 23-4-2(c)(2)(ii). These five elements include:

(A) That a specific unsafe working condition existed in the workplace which presented a high degree of risk and a strong probability of serious injury or death;

(B) That the employer had a subjective realization and an appreciation of the existence of such specific unsafe working condition and of the high degree of risk and the strong probability of serious injury or death presented by such specific unsafe working condition;

(C) That such specific unsafe working condition was a violation of a state or federal safety statute, rule or regulation, whether cited or not, or of a commonly accepted and well-known safety standard within the industry or business of such employer, which statute, rule, regulation or standard was specifically applicable to the particular work and working condition involved, as contrasted with a statute, rule, regulation or standard generally requiring safe workplaces, equipment or working conditions;

(D) That notwithstanding the existence of the facts set forth in subparagraphs (A) through (C) hereof, such employer nevertheless thereafter exposed an employee to such specific unsafe working condition intentionally; and

(E) That such employee so exposed suffered serious injury or death as a direct and proximate result of such specific unsafe working condition.

W. Va. Code § 23-4-2(c)(2)(ii)(emphasis added).

A.  The Five Elements

"[I]n order to withstand a motion for summary judgment, a plaintiff must make a prima facie showing of dispute on each of the five factors." Mumaw v. U.S. Silica Co., 511 S.E.2d 117, 120 (W. Va. 1998).

> Notwithstanding any other provision of law or rule to the contrary, and consistent with the legislative findings of intent to promote prompt judicial resolution of issues of immunity from litigation under this chapter, the court shall dismiss the action upon motion for summary judgment if it finds, pursuant to Rule 56 of the Rules of Civil Procedure that one or more of the facts required to be proved by the provisions of subparagraphs (A) through (E) of the preceding paragraph (ii) do not exist . . . .

W. Va. Code § 23-4-2(c)(2)(iii)(B).  Thus, if the plaintiffs fail to prove even one of the elements under West Virginia Code § 23-4-2(c)(2)(ii), this Court must grant the defendant's motion for summary judgment.

> Each of the five factors under West Virginia Code § 23-4-2(c)(2)(ii) is an essential element of a 'deliberate intention' cause of action, which a plaintiff has the ultimate burden to prove.  Therefore, at the summary judgment stage, if a defendant should establish that no material issue of fact is in dispute on any one of the five factors, and such a finding is in favor of the defendant, summary judgment must be granted to the defendant.

Mumaw, 511 S.E.2d at 122.

The plaintiffs assert two distinct claims: (1) that Motor No. 95 had a tendency to derail, and (2) that the low joint at the 4,700-foot area of the track constituted unsafe working condition.

1.  <u>Specific Unsafe Working Condition</u>

First, plaintiffs have the burden of proving that a specific unsafe working condition "existed in the workplace which presented a high degree of risk and a strong probability of serious injury or death." W. Va. Code § 23-4-2(c)(2)(ii)(A).

a.  <u>Motor No. 95</u>

The plaintiffs assert that the tendency of locomotives to become derailed and wreck constituted a specific unsafe working condition. Specifically, the plaintiffs state that Motor No. 95 had a tendency to derail more than other motors. The plaintiffs do not present an expert to testify regarding the safety of the working conditions. Plaintiffs argue that locomotives becoming derailed and wrecking are unsafe working conditions by common knowledge and do not need to be proven through an expert.

The defendant argues that beyond plaintiffs' own allegations that the Motor No. 95 was unsafe, plaintiffs simply cannot show that the motor constituted an unsafe working condition. Defendant states that there is no evidence that Motor No. 95 actually derailed more than any other motor. The defendant further states that testimony from Mr. Smith, a mechanic working on Motor No. 95, stated that nothing could be found wrong with Motor No. 95. (Def.'s Ex. at 20.)

This Court finds that the plaintiffs have not submitted sufficient evidence of an unsafe working condition to survive a

motion for summary judgment. Plaintiffs contend that locomotives becoming derailed and wrecking constitute a unsafe condition. This Court disagrees with plaintiffs' assertion. In <u>Mayle v. Shoney's Inc.</u>, the court held that carrying an open five-gallon container of grease at approximately 365 degrees Fahrenheit down a grassy slope, by common knowledge, could cause serious injury. In the present case, the parties are dealing with more complicated issues, involving locomotives, mines, and skilled mechanics. The defendants have also brought forth evidence that the driver's error can be the cause of a motor derailing (Def.'s Ex. B at 23.) and it is not always because the motor itself is unsafe. (<u>Id.</u>)

This Court finds that the plaintiffs provide no evidence that Motor No. 95 was unsafe; there was no evidence that anything was mechanically wrong with the motor. Edward Gene Patterson, the former spotter man that loaded the cars in the mine,[2] testified that Motor No. 95 derailed more frequently than other motors. Mr. Patterson gave his opinion that he considered Motor No. 95 unsafe.[3] (Def.'s Ex. C at 16-7.) However, Mr. Patterson stated that Motor No. 95 was used when it needed to be used. (Def.'s Ex. C at 9.)

---

[2]Mr. Patterson is now retired. (Def.'s Ex. C at 7.)

[3]Mr. Patterson is not a mechanic and never worked on actually fixing motors. He has no basis for his testimony except for his own opinion.

In fact, the mechanics at Shoemaker Mine determined that nothing was wrong with Motor No. 95 and that it was safe to use.[4] There is no other testimony that Motor No. 95 was unsafe. To the contrary, there is testimony from Mr. Smith, a trained mechanic and skilled workmen, that Motor No. 95 was checked for problems and the motor was not unsafe to use. See Def.'s Ex. B at 26-28, 45; Def.'s Ex. D at 21, 41; Def.'s Ex. F at 30. There is no documentation that Motor No. 95 was in the shop for repairs more frequently than any other motor. Plaintiffs have failed to provide any evidence to the contrary. Further, plaintiffs provide no expert testimony to contend that a locomotive becoming derailed and wrecking is an unsafe working conditions. Thus, plaintiffs have failed to submit sufficient evidence of an unsafe working condition to survive a motion for summary judgment.

    b.    Low Joint

Plaintiffs contend that the low joint at the 4,700-foot area of the mine was an unsafe working condition. The plaintiffs relied on testimony from employees working at Shoemaker Mine to show that the 4,700-foot section of the mine was unsafe. The testimony

---

[4]Plaintiffs provided testimony from several Consolidation Coal Company employees who all stated that the workmen would prefer to take another motor, instead of Motor No.95. There was no testimony that Motor No. 95 was unsafe to use. To the contrary, the trained mechanic who had worked on Motor No. 95, Mr. Smith, stated that there was nothing found wrong with Motor No. 95. (Def.'s Ex. F at 20.)

clearly articulates that there have been derailments at the 4,700-foot section and that there has been water accumulated at this section on previous occasions.  There is no testimony that water had accumulated at the 4,700-foot area on the day Mr. Vincent was injured.

Defendant asserts that the plaintiffs cannot show that the low joint constituted an unsafe working condition that presented a high degree of risk and a strong probability of serious injury. Defendant contends that the plaintiffs have not presented any evidence from which a jury could find that a low joint existed on October 7, 2002.  Further, defendant argues that Rickie Parker, who served as chair of the safety committee, testified that he would not permit mineworkers to use sections of the track if he thought it would be unsafe.  (Def.'s Ex. D at 41-42.)

This Court finds that the plaintiffs have not submitted sufficient evidence of an unsafe working condition to survive a motion for summary judgment.  The plaintiffs provide testimony that the track at 4,700 feet is a low area on the hill that gets flooded.  However, the plaintiffs have failed to provide evidence regarding water accumulation at the 4,700-foot section of track on the day Mr. Vincent was injured.  There is also no expert testimony to provide evidence of water accumulation on the day Mr. Vincent was injured.  Finally, Mr. Vincent drove on the 4,700-foot section of track prior to his accident and he did not report a low joint.

(Def.'s Ex. A. at 24.)  There were no reports or complaints on that day regarding a low joint in the mine.  Thus, the plaintiffs failed to provide a genuine issue of fact that the low joint in the track could be an unsafe working condition.

2.  <u>Subjective Realization</u>

The plaintiffs must prove that "the employer had a subjective realization and an appreciation of the existence of such specific unsafe working condition <u>and</u> of the high degree of risk and the strong probability of serious injury or death presented by such specific unsafe working condition."  W. Va. Code § 23-4-2(c)(2)(ii)(B)(emphasis added).

> [A] plaintiff attempting to impose liability on the employer must present sufficient evidence, <u>especially</u> with regard to the requirement that employer had a subjective realization and an appreciation of the existence of such specific unsafe working condition <u>and</u> the strong probability of serious injury or death presented by such specific unsafe working condition. This requirement is not satisfied merely by evidence that the employer reasonably should have known of the specific unsafe working condition and of the strong possibility of serious injury or death presented by that condition. Instead, it must be shown that the employer <u>actually possessed such knowledge</u>.

<u>Blevins v. Beckley Magnetite, Inc.</u>, 408 S.E.2d 385, 393 (W. Va. 1991)(emphasis added).

a.  <u>Motor No. 95</u>

The plaintiffs assert defendant had a subjective realization and appreciation of the unsafe working condition and the high degree of risk and probability of injury because Motor No. 95 had

11

a tendency to derail and defendant's policy was to only use Motor No. 95 as a last resort.

The West Virginia Supreme Court of Appeals, in <u>Blevins v. Beckley Magnetite, Inc.</u>, 408 S.E.2d 385 (W. Va. 1991), noted that the requirement of subjective assessment prong is met by showing "that the employer actually possessed such knowledge." In <u>Mayles v. Shoney's, Inc.</u>, 405 S.E.2d 15, 21-2 (W. Va. 1990), the defendant had knowledge of an unsafe working condition because there was testimony that it was the general practice of employees to perform dangerous functions, there were rumors that employees were performing unsafe operations, employees complained to management about the unsafe procedures, and other employees had been injured by the unsafe procedures. In <u>Mayles</u>, the court had testimony from the manager that it had made plans to change the practice. <u>Id.</u> Thus, there was clear evidence that the defendant knew of the unsafe practice and knew it could seriously injure employees.

The plaintiffs assert that defendant should have known that Motor No. 95 was an unsafe working condition and that there was a strong probability of serious injury because it derailed on previous occasions. This Court disagrees with plaintiffs' argument. In <u>Kerns v. Slider Augering & Welding, Inc.</u>, 505 S.E.2d 611,617 (W. Va. 1997), the court held that there was no genuine issue of material fact as to the knowledge of an unsafe working condition merely because a similar accident had occurred in the

past. In <u>Kerns</u>, there was an explosion in a mine that resulted in two injuries from an auger machine.[5] The defendant constructed a shield on the auger machine to protect the operator in event of a future explosion. <u>Id.</u> at 614. The mine and auger machine were checked for safety and the United States Department of Labor, Mine Safety and Health Administration (hereinafter "MSHA") determined both were safe. <u>Id.</u> There was a second explosion and the plaintiff was injured. <u>Id.</u> at 615. The court determined that it would be impossible for the plaintiff to prove subjective realization on the part of the defendant. <u>Id.</u> at 617. The defendant thought the mine and auger machine were safe because MSHA stated that the auger machine was safe and there was the addition of a protective shield.[6] <u>Id.</u> Thus, the court held that defendant could not have known that the auger machine was unsafe and posed a serious risk to employees.

Similarly, this Court finds that the plaintiffs did not set forth any evidence that indicates that the employer actually possessed the knowledge that Motor No. 95 was unsafe and that there was a strong probability of serious injury or death because of Motor No. 95. While plaintiffs argue that defendant's policy was

_____

[5]An auger machine is a tool for boring holes in the core of the mine.

[6]MSHA did not issue a citation to Slider after the second explosion, however, it did conclude both explosions were caused in the same manner.

only to use Motor No. 95 as a last resort because is was unsafe, there is no evidence to support this assumption.[7] On the contrary, defendant states that Motor No. 95 was approved for use by a mechanic prior to plaintiff's accident. Defendant thought, by approval of the mechanics, that Motor No. 95 was safe. Thus, the plaintiffs failed to provide sufficient evidence that defendant possessed actual knowledge that Motor No. 95 constituted an unsafe working condition.

b. <u>Low Joint</u>

The plaintiffs failed to address the requirement that Consolidation Coal Company had a subjective realization and appreciation of the existence that the low joint was an unsafe working condition and that there was a high degree of risk and strong probability of serious injury presented by the low joint. Thus, the plaintiffs failed to meet the burden of proof of each condition of the Deliberate Intention Statute regarding the low joint.

West Virginia Code Section 23-4-2(c)(2)(iii)(B) directs the court to dismiss an action upon summary judgment when there is not "sufficient evidence to find each and every one of the facts required to be proven" by the Deliberate Intention Statute.

---

[7]There is no evidence provided that defendant had a policy of encouraging employees to use unsafe equipment. Nor is there any evidence that defendant specifically demanded that an employee use Motor No. 95 before it was approved by a mechanic.

Consequently, plaintiffs cannot maintain their cause of action under West Virginia Code § 23-4-2.[8] Because the plaintiffs are required to prove the existence of all five elements for both claims in order to state a cause of action under that section and because the plaintiffs have failed to satisfy two of the elements, this Court need not address the remaining elements. Thus, both of plaintiffs' claims, the tendency of Motor No. 95 to derail and the low joint at the 4,700-foot area of the mine, have not met the burden of proof to survive a motion for summary judgment.

## V. Conclusion

Because the defendant has set forth sufficient evidence to demonstrate to this Court that there is an absence of a genuine issue of material fact with respect to each of the plaintiffs' claims, the defendant's motion for summary judgment is hereby GRANTED pursuant to Rule 56(e). Accordingly, this action is DISMISSED and STRICKEN from the docket of this Court.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein. Pursuant to Federal Rule of Civil Procedure 58, the Clerk is DIRECTED to enter judgment on this matter.

---

[8]The claim for loss of consortium filed by plaintiff, Georgia Vincent, is a derivative claim and must be dismissed. W. Va. Fire & Casualty Co. v. Stanley, 602 S.E.2d 483, 494 (W. Va. 2004).

DATED:     November 10, 2005


                              /s/ Frederick P. Stamp, Jr.
                              FREDERICK P. STAMP, JR.
                              UNITED STATES DISTRICT JUDGE